IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| SHERRY KRALOVETZ-PUCEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RECEIVABLES PERFORMANCE | ) |
| MANAGEMENT LLC, and DOES 1-5, | ) |
| | ) |
| Defendants. | ) |

# COMPLAINT

## INTRODUCTION

1. Sherry Kralovetz-Pucel seeks redress from the unlawful practices of Receivables Performance Management LLC ("RPM"), which were committed in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), in the course of debt collection attempts RPM made.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§1331, 1337 and 1367, and 15 U.S.C. §1692k.

3. Because defendant does business here, and because its collection communications were received by plaintiff here, venue and personal jurisdiction in this District are proper.

## PARTIES

4. Kralovetz-Pucel lives in Brown County, Wisconsin.

5. RPM is a Washington limited liability company. Its registered agent is Andrew Shafer, who keeps offices at 999 Third Avenue, Suite 2525, Seattle, Washington 98104.

6. RPM is a collection agency that uses mail, telephone and electronic wire services to collect debts that were originally owed to others, and which were allegedly incurred for personal, family or household purposes.

1

7. Does 1-5 are unknown persons or entities responsible for the conduct described herein, including (A) the entity on whose behalf RPM was placing the calls to Kralovetz-Pucel, and (B) other responsible persons or entities.

**FACTS**

8. RPM has sought collection of debt allegedly owed by someone named "Latrina."

9. During 2014, Kralovetz-Pucel received more than 100 automated telephone calls on her cell phone from RPM.

10. Each of these calls were placed from (425) 615-6783 – a number that is owned or controlled by RPM.

11. On two occasions, Kralovetz-Pucel spoke with a representative of RPM.

12. One call between Kralovetz-Pucel and RPM occurred on August 18, 2014:

> **Representative:** Hello, can I speak to Latrina?
>
> **Plaintiff:** I'm sorry; there is no Latrina at this number. How did you get this number?
>
> **Representative:** Sorry, ma'am. You won't receive any more calls from this number.

13. Another call between the parties occurred on on August 19, 2014:

> **Representative:** Latrina?
>
> **Plaintiff:** I've already told another of your representatives that there is no Latrina here. You have the wrong number. Please remove my phone number from your calling list. I am registered with the Do Not Call List for this cell number with both the State & Federal Government. Please, I'm ill; don't call here again.

14. Kralovetz-Pucel is not connected to "Latrina", and did not furnish her cell phone number to defendant or anyone defendant represents.

15. Kralovetz-Pucel nevertheless continued to be bombarded with calls made by RPM in an attempt to reach "Latrina," from August 19, 2014 to October 19, 2014.

16. On information and belief, the calls RPM made to Kralovetz-Pucel were placed using predictive dialers, or using a recorded voice, or both of these.

17. Predictive dialers place calls without human intervention until a connection is made, in which case the dialers attempt to connect the recipient with a debt collector.

18. In many of the 110 phone calls received by Kralovetz-Pucel, no live person was on the line when she answered, or when her voicemail application picked up the call. Instead, she heard music for seconds or minutes, after which a live person would get on the line and ask for "Latrina." This experience is characteristic of calls from predictive dialers, which place large numbers of automated calls and attempt to predict when a live representative will be available to take the call.

19. Kralovetz-Pucel did not authorize RPM to automatically place calls to her cell phone.

20. By making such calls, RPM violated 47 U.S.C. §227(b)(1):

> **It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –**
>> **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ....**
>> **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call....**

21. Violations of the TCPA are actionable, even if they are only negligent.

22. Kralovetz-Pucel alleges that violations of the TCPA described herein were committed willfully, as automated calls from RPM continued for months after it was advised to stop the calls to Kralovetz-Pucel.

23. Those who violate 47 U.S.C. §227 are liable under 47 U.S.C. §227(b)(3)

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –
> - (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> - (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> - (C) both such actions.
>
> If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

24. Further, RPM's conduct was generally harassing. In particular, RPM's calls were made to calls to a cell phone on which Kralovetz-Pucel receives important calls from family and friends; to have that number repeatedly dialed by a debt collector who has no business calling Kralovetz-Pucel caused unnecessary annoyance, frustration and damage.

25. Debt collectors are prohibited from using harassing or abusive conduct in the course of debt collection by 15 U.S.C. §1692d:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section ....

**(5)** causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; [or]

**(6)** except as provided in [15 U.S.C. §1692b], the placement of telephone calls without meaningful disclosure of the caller's identity.

26. Under 15 U.S.C. §1692k(a), debt collectors who violate the FDCPA are liable for

**(1)** any actual damage sustained by such person as a result of such failure;

**(2)**

  **(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.... [and]

**(3)** in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court....

## COUNT ONE

27. Given the preceding, RPM and the Doe defendants violated the TCPA.

28. A controversy exists between the parties, for which the award of declaratory and injunctive relief (as well as damages) would be proper.

WHEREFORE, plaintiff respectfully seeks judgment in her favor, awarding

(A) statutory damages,

(B) a declaration that RPM's conduct is illegal,

(C) an injunction against further violations,

(D) expenses and costs of suit, and

(E) all other proper relief.

5

## COUNT TWO

29.     Given the preceding, RPM violated the FDCPA.

WHEREFORE, plaintiff respectfully seeks judgment in her favor, awarding

   (A)     statutory damages,

   (B)     actual damages,

   (C)     attorney's fees,

   (D)     expenses and costs of suit, and

   (E)     all other proper relief.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Thomas E. Soule
EDELMAN COMBS LATTURNER & GOODWIN LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN COMBS LATTURNER & GOODWIN LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

T:\30473\Pleading\Complaint_Pleading.wpd